On the Merits.
White, J.
On the 7th January, 1875, William Hal'ey, “actingas agent of Henry Bull, liis partner; now absent, and also for and on his own behalf,” leased to Simon Frank, agent of the Louisiana Match Manufacturing Company, composed of Leopold Frank and J. P. Purcell, certain real estate in this city for the sum of twenty-five dollars per month.
On the 21th April, 1875, Haley transferred all his right, title, and interest in the lease and leased premises to O. H. Washburn. On 24th April, 1875, Frank, agent for the Louisiana Match Manufacturing Company, acknowledged himself as the lessee of Washburn, upon the same terms as those contained in the lease from Haley. On the 23d of October, 1877, W. W. Washburn, administrator of 0. H. Washburn, sued *429 Simon Frank, agent of the^ Louisiana Match Company, and the said company, for the sum of §!525, rent due. A provisional seizure issued, under which the sheriff took certain machinery, which was-stored in a warehouse and which had within fifteen days been removed from the leased premises. Frank answered by a general denial. Edward Adler intervened, and claimed the ownership of the things provisionally seized, averring himself to be the bona fide purchaser thereof. Henry C. Bull intervened, and claimed ownership of the leased premises and the lease, averring that his agent, Haley, had no authority to transfer. He prayed that the rent sued for be decreed to belong to him. The lower court gave judgment in favor of plaintiff and against Simon Frank individually, for the amount sued for, and dismissed the interventions of Bull and Adler. Frank, Bull, and Adler appealed. We will, to avoid confusion oE statement, consider the appeals separately:
1. The intervention of Bull was properly dismissed. It was never answered or put at issue, and no evidence was offered to sustain it.
2. Frank complains that he has been condemned personally, when he was sued only as agent. We think the judgment below correct. Frank made the lease as agent of the Louisiana Match Manufacturing Company, and was sued under the same designation taken by him in the lease. The proof entirely satisfies us that the company he assumed to represent was a myth and an awkwardly contrived fraud. Frank himself says the company was composed of Leopold Frank, his son, and one J. P. Bouchel. He adds: “ This company was formed about the time the lease from Haley * * *. There were only two men in the company. It was really a partnership. I don’t know where Mr. Bouchel lives. I have not seen him for more than a year. * * *. That partnership between Leopold Frank and P. Bouchel was dissolved about five months after it began. Then Leopold Frank continued the business by himself.”
Despite this testimony, he insists although he paid the rent after the concern had disappeared, if ever it had an existence, that he still continued its agent. His testimony is disingenuous, evasive, if not false. The proof satisfies us that he was the real lessee; that the business was his, the property his ; that he took the lease in the name of a fictitious person, probably as a preparation for the time when he would consider it expedient to dispose of the property, so as to leave the landlord without his pledge and without personal recourse. With this view, of course, the authorities quoted to the effect that an agent whoacts in the name of a disclosed principal cannot be held personally liable, are inapplicable. In such a ease the agent is a mere link or nudus minister uniting the minds of the contracting parties. Here we find but one party, and no principal, and therefore no room for doubt as to Frank’s personal liability.
3. Counsel for the intervenor Adler have urged upon us a careful *430 examination of the record in order to satisfy our rninds that the removed machinery was really purchased by Adler. We have given the testimony the desired examination, and have concluded, that a no more patent fraud was ever presented to the eye of a court of justice. Adler professes to have bought from Leopold Prank, the son of Simon. His memory is pertinaciously lucid, in one particular only — that he bought and paid three thousand dollars cash. In all else, he is evasive, forgetful, and, we think, untruthful. He just dropped in and bought the machinery, and paid the three thousand dollars in thousand-dollar bills. To state the contradictions with which his testimony is replete would require, its reproduction.
The testimony establishes in our opinion that Simon Prank was the owner of the machinery, that he removed it to defeat and defraud the lessor, that after the pretended sale to Adler, Prank sold a part of it and exercised dominión over it, and that the sale, so called, to Adler was simulated and concocted with the object of defrauding. The appellee has filed answer praying the affirmance of the judgment with damages for frivolous appeal. We think they should be allowed ; at least against Adler and Prank.
It is therefore ordered that the judgment of the lower court be affirmed, with fiye per cent damages against Simon Prank, and a like amount against Edward Adler.
Rehearing refused.